**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

JOMAR GROUP, LTD.

      Plaintiff,

    v.

ECOLAB PRODUCTION LLC.,

      Defendant.

No.: 26-11732

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Jomar Group Ltd. ("Jomar"), by its undersigned counsel, hereby requests that this Court enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 against Ecolab Production LLC. ("Ecolab"). In support of this claim, Jomar avers as follows:

**INTRODUCTION**

1. This Declaratory Judgment Action arises from a contractual dispute between Jomar and its customer, Ecolab, related to certain stainless steel ball valves ("SSBVs") designed through collaboration between the parties and distributed by Jomar to Ecolab beginning in 2023.

2. Ecolab has submitted a Demand for Arbitration with JAMS, asserting a warranty claim against Jomar for compensation related to the alleged failure of certain SSBVs sold by Jomar to Ecolab. *See* Ecolab's Demand for Arbitration, attached hereto as **Exhibit 1.**

3. The parties disagree regarding the applicable contract that governs the warranty claim and, consequently, the arbitrability of the dispute, including whether JAMS has jurisdiction over it. Jomar has responded to Ecolab's Demand for Arbitration with JAMS, raising jurisdictional and other defenses. *See* Jomar's Response to the Demand for Arbitration, attached hereto as **Exhibit 2**.

4. Jomar now seeks a declaratory judgment from this Court finding that the applicable contract between Jomar and Ecolab does not contain an arbitration agreement. Thus, Jomar is not required to arbitrate the dispute with JAMS.

## THE PARTIES

5. Plaintiff Jomar is a corporation organized and existing under the laws of the State of Michigan. Jomar's principal place of business is located at 7243 Miller Drive, Warren, Michigan 48092.

6. Defendant Ecolab is a corporation organized and existing under the laws of the State of Delaware. Ecolab's principal place of business is located at 1 Ecolab Place, St. Paul, Minnesota 55102.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. While this is an action for Declaratory Judgment seeking a judicial determination that there is no agreement to arbitrate between the parties, and liability and damages in the underlying dispute are contested, Ecolab is claiming approximately $14,000,000 in alleged damages here, therefore the amount in controversy is well in excess of the jurisdictional limit. *See Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation").

8. Further, Jomar's request for Declaratory Judgment is governed by 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 insofar as there exists a present controversy between the parties of a justiciable nature regarding their respective contractual rights and obligations.

9. The Court has personal jurisdiction over Jomar because it is a resident of the State of Michigan.

10. The Court has personal jurisdiction over Ecolab because, in addition to its continuous business contacts with the State of Michigan, Ecolab entered into a contract with a Michigan citizen with full knowledge that the contract's executory portions were to be performed in Michigan. Indeed, the relationship between the parties that gives rise to this dispute has been ongoing for more than ten (10) years, during which time Ecolab was continuously doing business with Jomar and in the State of Michigan more generally. This dispute arises from those contacts with the forum State.

11. Venue is proper in this district under 28 U.S.C. 1391(b)(2) and 29 U.S.C. 1332(e)(2) because Jomar is seeking declaratory relief as to a contract entered into and performed in this district.

**FACTS**

12. The relevant relationship between the parties began in approximately 2016 when Ecolab began purchasing ball valves from Jomar for use in Ecolab's "Click N Clean" system, which is allegedly designed to dispense concentrated liquid products for cleaning purposes. *See* **Exhibit 1**.

13. Upon information and belief, Ecolab represents that it has sold "several hundred thousand" Click N Clean units to customers "throughout North America." *Id.*

14. Upon information and belief, in or around 2016, Ecolab purchased the first in a series of ball valves from Jomar.

15. Upon information and belief, in 2022, Ecolab decided to purchase a stainless-steel variant of the ball valves.

16.     The essential terms of the parties' agreement for the supply of SSBVs were established over the course of several months of back-and-forth discussion amongst the parties.

17.     Upon information and belief, on December 7, 2021, Jomar quoted a price for the SSBVs to Ecolab, at a cost of $4.27 for a Teflon coated ball version, and $5.92 for upgrade to stainless steel ball. A true and correct copy of the December 7, 2021, email correspondence between Jomar and Ecolab is attached hereto as **Exhibit 3**.

18.     In that same communication, Jomar stated that "[a] new Private Label/OEM Agreement would need to be signed as usual to guarantee that all inventory is exhausted in the event of a change as it is exclusive to Ecolab." *Id.*

19.     Upon information and belief, on April 26, 2022, Jomar communicated to Ecolab a limited 1-year express warranty for the SSBVs. Jomar also provided Ecolab with an updated engineering drawing of the SSBVs. A true and correct copy of the April 26, 2022, email correspondence between Jomar and Ecolab is attached hereto as **Exhibit 4**.

20.     Upon information and belief, Ecolab ultimately informed Jomar that Ecolab intended to move forward with the SSBV option. A true and correct copy of the June 9, 2022, email correspondence between Jomar and Ecolab is attached hereto as **Exhibit 5**.

21.     Thereafter, following some additional back-and-forth negotiations as to price, Jomar offered the part number, description of the valve, and initial product run (80,000 units with various releases). A true and correct copy of the July 11, 2022, email correspondence between Jomar and Ecolab is attached hereto as **Exhibit 6**.

22.     With the parties in agreement as to the price, quantity, and applicable warranty for the SSBVs, Jomar and Ecolab ultimately entered into an Original Equipment Manufacturer Agreement (the "OEM Agreement") formalizing the transaction on August 3, 2022. A true and

correct copy of the executed OEM Agreement is attached hereto as **Exhibit 7**. Notably, the OEM Agreement was signed by Ecolab's head of procurement.

23. Upon information and belief, with the OEM Agreement in place, Ecolab ordered the initial batch of 80,000 SSBVs from Jomar.  A true and correct copy of the August 4, 2022, email correspondence between Jomar and Ecolab is contained in **Exhibit 5**.

24. No other terms were or could be incorporated as part of the agreement between the parties.

25. Significantly, none of the communications between the parties that established the essential terms of the agreement for the manufacture and sale of SSBVs (i.e., price, quantity, and limited 1-year warranty) contained any reference to the arbitrability of disputes.

26. Likewise, the OEM Agreement does not contain an arbitration agreement.

27. The OEM Agreement (and the prior correspondence establishing its essential terms) is the sole contract that defines the parameters of the manufacture and sale of the SSBVs.

28. The OEM Agreement has never been subsequently modified by written agreement of the parties.

**COUNT I**
**Declaratory Judgment that JAMS**
**Does Not Have Jurisdiction Over Ecolab's Claim(s)**

29. Jomar incorporates paragraphs 1-29 into this paragraph.

30. Under 29 U.S.C. 2201(a), "any court of the United Sates . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."

31. A party to a contract may assert a claim for declaratory judgment wherever an actual controversy exists concerning the rights and obligations under the contract.

32.     Jomar seeks judicial intervention to determine the scope of the parties' agreement which will determine the arbitrability of the dispute related to Jomar's sale of SSBVs to Ecolab.

33.     Ecolab has submitted a Demand for Arbitration to JAMS for Jomar's alleged breach of warranty related to Jomar's supply of the SSBVs. *See* **Exhibit 1**. Jomar has opposed the jurisdiction of JAMS over Ecolab's claim(s). *See* **Exhibit 2**.

34.     In its Demand for Arbitration, Ecolab asserts that its own terms and conditions govern its claim(s) related to the SSBVs. Those terms and conditions contain a permissive arbitration provision that purports to allow either party to submit a dispute to JAMS for resolution.

35.     Jomar is not asking the Court to interpret the arbitration provision contained in Ecolab's unilateral terms and conditions because those terms and conditions do not and cannot apply and, therefore, are not at issue.

36.     Ecolab's Demand for Arbitration conveniently ignores the existence of the OEM Agreement, which contains no arbitration provision, nor does it make any mention of arbitrability of disputes. Likewise, none of the communications between the parties that defined the essential terms of their agreement regarding Jomar's supply of SSBVs made any mention of arbitration or arbitrability.

37.     In the absence of an applicable arbitration provision, Ecolab has attempted to graft unrelated terms and conditions, including an arbitration clause, onto the parties' agreement where such terms were never incorporated into the parties' binding contract. Nor were these terms understood by Jomar to form part of the basis of its bargain with Ecolab.

38.     The OEM Agreement is the only written agreement between the parties that governs the sale of SSBVs by Jomar to Ecolab.

6

39. The OEM Agreement was the culmination of a months-long, arms-length negotiation between the parties, which established the price, quantity, and applicable warranty related to the supply of SSBVs by Jomar to Ecolab.

40. Insofar as the OEM Agreement governs Ecolab's SSBV-related claim(s), there is no binding agreement between the parties to arbitrate Ecolab's such claim(s), and Jomar does not consent to the jurisdiction of JAMS. Accordingly, JAMS lacks jurisdiction over Ecolab's claim(s), which are not arbitrable.

41. Further, Ecolab cannot deprive Jomar of its constitutional right to a civil trial of the contractual claims at issue and force it into arbitration given the absence of a binding arbitration agreement between the parties.

**PRAYER FOR RELIEF**

**WHEREFORE**, Jomar respectfully requests that the Court award the following relief against Ecolab and in favor of Jomar:

A. Declaring that there is no applicable or enforceable agreement to arbitrate between the parties, therefore JAMS lacks jurisdiction over Ecolab's claim(s) absent the express consent of both Jomar and Ecolab;

B. Declaring that Jomar cannot be deprived of its Constitutional right to have its dispute with Ecolab heard by a Court of competent jurisdiction; and

C. Awarding any other relief to Jomar that the Court deems to be just and proper under the circumstances.

Dated: May 27, 2026                    Respectfully submitted by:

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

7

/s/  Clem C. Trischler
Clem C. Trischler
cct@pietragallo.com
Frank H. Stoy (application to be submitted)
fhs@pietragallo.com
Alyssa M. Dedola (application to be submitted)
ad@pietragallo.com
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel: (412) 263-2000
Fax: (412) 263-2001

Michael A. Schlechtweg (application to be submitted)
Buchanan Ingersoll & Rooney PC
michael.schlechtweg@bipc.com
150 N. Riverside Plaza
Suite 2800
Chicago, IL 60606
Phone: (312) 261-8777

Kyle D. Black
Buchanan Ingersoll & Rooney PC
Kyle.black@bipc.com
301 Grant Street
Suite 200
Pittsburgh, PA 15219
Phone: (412) 562-8800
P84407

*Attorneys for Jomar Group Ltd.*

8